1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEBRA ERIKA MCGARRAH,                      No.  2:12-cv-2296 AC

12              Plaintiff,

13        v.                                    ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for a period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act ("the Act").  The parties' cross-motions

21   for summary judgment are pending.  For the reasons discussed below, the court will deny

22   plaintiff's motion for summary judgment and will grant the Commissioner's motion for summary

23   judgment.

24                          PROCEDURAL BACKGROUND

25         Plaintiff filed an application for SSI on May 11, 2009, alleging disability beginning on

26   October 16, 2008.  Administrative Record ("AR") 142-48.  Plaintiff's application was denied

27   initially and again upon reconsideration.  AR 58-61, 63-67.  On January 6, 2011, a hearing was

28   held before administrative law judge ("ALJ") Laura Speck Havens.  AR 35-52.  Plaintiff

                                                1

appeared with attorney representation at the hearing, at which she and a vocational expert, Steve Schmidt, testified.  In a decision dated May 10, 2011, the ALJ issued a decision finding plaintiff not disabled.  AR 16-29.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 16, 2008 through her date last insured of December 31, 2009.
>
> 3.  Through the date last insured, the claimant had the following severe impairments: neuropathy, degenerative joint disease, degenerative disc disease, and depression.
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is restricted to jobs involving simple, repetitive tasks.
>
> 6.  Through the date last insured, the claimant was unable to perform any past relevant work.
>
> 7.  The claimant was born on June 26, 1955 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured.
>
> 8.  The claimant has at least a high school education and is able to communicate in English.
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10.  Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from October 16, 2008, the alleged onset date, through December 31, 2009, the date last insured.

AR 16-29.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council

1  denied review on July 10, 2012, leaving the ALJ's decision as the final decision of the

2  Commissioner of Social Security.  AR 1-4.

3                              FACTUAL BACKGROUND

4       Born on June 26, 1955, plaintiff was 53 years old on the alleged onset date of disability

5  and 55 years old at the time of the administrative hearing.  Plaintiff has a high school diploma and

6  last worked at a factory for over twenty years before the factory closed in 2003.  See AR 39, 443.

7  Plaintiff alleges disability beginning on October 16, 2008, the date she fell off a chair and injured

8  her left knee.  AR 39.

9                               LEGAL STANDARDS

10      The Commissioner's decision that a claimant is not disabled will be upheld if the findings

11  of fact are supported by substantial evidence in the record and the proper legal standards were

12  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

13  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

14  180 F.3d 1094, 1097 (9th Cir. 1999).

15      The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17  more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

18  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

19  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

20  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

21  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

22  Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

23      Although this Court cannot substitute its discretion for that of the Commissioner, the

24  Court nonetheless must review the record as a whole, "weighing both the evidence that supports

25  and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of

26  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d

27  993, 995 (9th Cir.1985).

28      "The ALJ is responsible for determining credibility, resolving conflicts in medical

                                        3

1   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

2   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

3   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.

4   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons

5   stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

6   rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d

7   871, 874 (9th Cir. 2003).

8        The court will not reverse the Commissioner's decision if it is based on harmless error,

9   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

10  ultimate nondisability determination.'"   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

11  Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

12  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

13                                        ANALYSIS

14       Plaintiff seeks summary judgment on the grounds that: (1) the ALJ failed to properly

15  credit the opinions of three medical professionals and (2) the ALJ failed to include any mental

16  limitations in the residual functional capacity ("RFC") assessment.  The Commissioner, in turn,

17  argues that the ALJ's decision is supported by substantial evidence and is free from legal error.

18  A.     Opinions of Medical Professionals

19       Plaintiff first argues that the ALJ erred in her treatment of three examining medical

20  professionals.  These include the opinions of psychiatrist Dr. Les Kalman, who evaluated plaintiff

21  on December 10, 2010; a State disability consulting psychologist, Dr. Randy Kolin, who

22  examined plaintiff on February 10, 2011; and a State disability orthopedic consultant, Dr.

23  Khurram Khan, who examined plaintiff on February 12, 2011.

24       1.     Legal Standards

25       The weight given to medical opinions depends in part on whether they are proffered by

26  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

27  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

28  weight is given to the opinion of a treating professional, who has a greater opportunity to know

and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001),[1] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

2.      Dr. Les Kalman and Dr. Randy Kolin

a.      Background

i.      Dr. Les Kalman

On December 10, 2010, Dr. Les Kalman conducted a psychiatric evaluation of plaintiff, whose chief complaints were depression and anxiety.  AR 442-45.  Plaintiff reported that her depression had gotten progressively worse since her knee accident in October 2008.  She stated that she has good and bad days and that there are days when she wants to stay in bed.  She

---

[1] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1   claimed that she had bouts of depression throughout her life related to traumatic events, including

2   the death of her father.  Plaintiff also reported that she does limited cooking, shopping and

3   housekeeping; her husband mainly performs these activities.  She also mentioned that she is

4   unable to make decisions and she can't handle stress.

5           Dr. Kalman described plaintiff as anxious, tense, nervous and apprehensive.  She appeared

6   alert and oriented, but her mood was very anxious and depressed, her affect was restricted, and

7   she had vegetative signs, including decreased energy and insomnia, the latter of which was helped

8   by Ambien.  Dr. Kalman diagnosed plaintiff with Adjustment Disorder, mixed with anxiety and

9   depression related to medical condition; generalized anxiety disorder; and dysthymia.  He noted

10  that plaintiff's condition is not expected to improve significantly within the next 12 months.

11          Also on December 10, 2010, Dr. Kalman completed a Medical Source Statement

12  Concerning the Nature and Severity of an Individual's Mental Impairment.  AR 438-41.  Dr.

13  Kalman noted no significant limitations as to plaintiff's ability to remember locations; to

14  understand, remember and carry out short and simple instructions or tasks; to perform activities

15  within a schedule, maintain regular attendance and be punctual; to ask simple questions or request

16  assistance from supervisors; to maintain socially appropriate behavior; to be aware of normal

17  hazards and take appropriate precautions; and to set realistic goals or to make plans independently

18  of others.

19          Dr. Kalman indicated that plaintiff was mildly limited in her ability to maintain attention

20  and concentration for extended periods of time; to sustain an ordinary routine without

21  supervision; to make simple work-related decisions; to get along with co-workers or peers

22  without unduly distracting them or exhibiting behavioral extremes; to respond appropriately to

23  expected or unexpected changes in the work setting; and the ability to travel to unfamiliar places

24  and/or use public transportation.

25          Next, Dr. Kalman noted that plaintiff is moderately limited in her ability to understand,

26  remember and carry out detailed instructions; to work in coordination with others without being

27  unduly distracted by them; to complete a normal workday and workweek without interruptions

28  from her symptoms and to perform at a consistent pace without an unreasonably number and

length of rest periods; and to interact appropriately with the general public or customers.  Finally, Dr. Kalman noted that plaintiff is markedly limited in her ability to accept instructions and to respond appropriately to criticism from supervisors.

As to the effect of work-related stressors, Dr. Kalman noted that the following would increase plaintiff's level of impairment: unruly, demanding or disagreement customers even on an infrequent basis; production demands or quotas; a demand for precision; a need to make quick and accurate independent decisions on a consistent basis; and a need to make accurate independent decisions on a consistent basis.

ii.     Dr. Randy Kolin

On February 10, 2011, Dr. Randy Kolin conducted a psychiatric evaluation of plaintiff. AR 656-63.  Plaintiff's chief complaints again were depression and anxiety, stating "I will get up in morning and begin to cry, I am so tired, I do not want to be around anybody."  She reported that she can't sleep, gets sad, can't focus, has poor concentration, loses track easily, and experiences claustrophobia when visiting stores.  She also reported that she feels these symptoms daily and that they impact her daily living, causing her to feel anxious around others and unable to function consistently.  Plaintiff stated that she has no history of suicide attempts, was not suicidal at the time, and had no history of psychiatric hospitalizations.

Dr. Kolin's mental status exam revealed plaintiff to be fully oriented with fair intelligence, adequate concentration, and fair memory.  He diagnosed her with major depressive disorder, recurrent, moderate; and with generalized anxiety disorder.  He noted that plaintiff was moderately impaired in most abilities, including ability to understand, remember, carry out job instructions; maintain concentration, persistence and pace; relate to and interact with supervisors, co-workers and the public; and adapt to day-to-day work activities.

Dr. Kolin's functional assessment was that plaintiff can adequately perform one or two step simple repetitive tasks and is unable to adequately perform complex tasks; has a moderately impaired ability to accept instructions from supervisors and interact with coworkers and the public; is unable to perform work activities on a consistent basis without special or additional instruction in light of moderate memory impairments; mildly impaired ability to maintain regular

7

1  attendance; mildly impaired ability to complete a normal workday or workweek without

2  interruptions; and a moderately impaired ability to handle normal work-related stress from a

3  competitive work environment.  Dr. Kolin determined that plaintiff could benefit from starting

4  therapy and starting psychiatric medication.  He noted that plaintiff's prognosis is poor.

5           b.       Analysis

6        Although the ALJ found that Dr. Kalman and Dr. Kolin's assessments were consistent

7  with their clinical findings, she nonetheless gave them reduced probative weight because these

8  doctors, who each examined plaintiff only once, gave opinions that were inconsistent with

9  plaintiff's ongoing mental health treatment notes.  Plaintiff contends the ALJ's rationale is

10  erroneous.

11        In her decision, the ALJ determined that the plaintiff's medically determinable depression

12  could reasonably be expected to cause the symptoms alleged, but the ALJ doubted the severity of

13  the symptoms based, inter alia, on review of plaintiff's ongoing mental health treatment notes,

14  which established that treatment had been successful.  For example, the ALJ discussed plaintiff's

15  mental health treatment by Dr. Jane Fernandez from October 2009 through the present.  AR 24.

16  Dr. Fernandez's notes reflect that when she first met with plaintiff on October 22, 2009, plaintiff

17  displayed mild agitation, depression, and anxiety.  AR 366.  Her affect was labile, her thought

18  process was mostly organized, and her suicidal ideations were passive.  Id.  Dr. Fernandez

19  diagnosed plaintiff with post-traumatic stress disorder and depression not otherwise specified,

20  rule out bipolar spectrum.  Id.  Dr. Fernandez referred plaintiff to therapy and discussed the

21  possible use of medication for mood stabilization.  Id.  On November 19, 2009, plaintiff returned

22  to Dr. Fernandez and was noted to be still tearful, depressed and anxious.  AR 364.  In this same

23  note, Dr. Fernandez inconsistently stated that plaintiff both felt passive suicidal ideations and

24  *denied* suicidal ideations.  See id.  Plaintiff, who was started on Celexa and Ambien by Dr.

25  Fernandez, was scheduled to start therapy that week.  Id.  In January 2010, Dr. Fernandez met

26  with plaintiff again, who said that she felt more "level."  AR 363.  Plaintiff was less tearful and

27  irritable at this meeting, her energy had improved, and her anxiety both decreased and improved.

28  See id.  Plaintiff denied suicidal ideations and was deemed to have an appropriate affect.  Id.  Dr.

Fernandez continued plaintiff on her medication and advised her to continue therapy.  Id.  On

February 4, 2010, Dr. Fernandez's notes reveal that plaintiff still felt some anxiety and that she

was experiencing increased stress because her husband was laid off from his job, plaintiff was

scheduled to have another knee surgery, and plaintiff's daughter was fired from her job.  See AR

654.  On March 18, 2010, Dr. Fernandez noted that plaintiff's anxiety was better that week, that it

was moderate, and that it was improved from the first visit.  AR 653.

As for plaintiff's therapy sessions, plaintiff discussed her history of abuse and depression,

which she claimed resulted in poor concentration, indecisiveness and low self-esteem.  See AR

449-58.  Because she was entitled to make reasonable inferences from the record, the ALJ

determined that these and Dr. Fernandez's notes revealed that plaintiff's anxiety was situational,

increasing during periods of intra-family conflict.  Further, the goals of therapy were to increase

plaintiff's decisiveness, assertiveness and self-confidence, and the notes reflect that plaintiff's

anxiety indeed improved as these goals were being met.

It is evident, then, that the record reveals an inconsistency between the severity of

plaintiff's depression and anxiety as expressed in plaintiff's ongoing mental health treatment

notes versus the opinions of the one-time examining doctors, Drs. Kalman and Kolin.  Whereas

the examining doctors opined that plaintiff's symptoms were severe, resulting in substantial

interruption to plaintiff's ability to do work, the ongoing mental health treatment notes reveal that

medication and therapy were helpful to plaintiff and that her anxiety and depression, which were

mostly situational, were improving.  Given the conflicting medical record, the ALJ was obligated

to resolve the inconsistency.[2]  Magallanes, 881 F.2d at 750.  Thus, the court finds no error here.

3.    Dr. Khurram Khan

a.    Relevant Background

On February 12, 2011, Dr. Khan examined plaintiff for a comprehensive orthopedic

_____

[2] In giving reduced weight to Dr. Kolin's opinion, the ALJ also relied on internal inconsistencies
in the doctor's narrative report and his questionnaire functional assessment.  See AR 27.  There
was no error in this regard.  See also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)
(holding that contradiction between treating physician's assessment and clinical notes justifies
rejection of assessment).

1  evaluation and wrote a narrative report discussing his findings.  AR 665-70.  Prior to the

2  evaluation, Dr. Khan reviewed extensive medical records indicating that plaintiff suffered from

3  chronic headaches and problems with her left knee.  As to her activities of daily living, he wrote

4  that plaintiff is able to drive and attend to her personal needs, and as to household work, plaintiff

5  can perform everything in a slow manner and with some assistance from her husband.

6  Following a mostly normal physical examination, Dr. Khan found that plaintiff had, inter

7  alia, left knee bony deformity without any swelling or effusion, decreased left handgrip, and

8  mostly normal motor strength except for the right side ankle dorsiflexion.  He diagnosed plaintiff

9  with neuropathy, cervical spine spondylosis, carpal tunnel syndrome, cervicalgia, cervicogenic

10  headaches, and left knee degenerative joint disease.

11  As for Dr. Khan's functional assessment, he indicated that he did not feel that plaintiff's

12  condition will impose any limitations for 12 continuous months.  He also noted that plaintiff

13  could stand / walk up to six hours in an 8-hour day; could sit for up to six hours; did not require

14  the use of an assistive device; can lift / carry up to 25 pounds frequently and 50 pounds

15  occasionally; is able to balance, stoop, kneel, crouch and crawl without limitation; is able to

16  reach, handle, finger, and feel without limitation; and has no workplace environmental

17  limitations.

18  On March 20, 2011, over one month after examining plaintiff, Dr. Khan completed a

19  questionnaire Medical Source Statement of Ability to Do Work-Related Activities (Physical).

20  AR 671-676.  In this form, Dr. Khan again indicated that he did not think plaintiff's limitations

21  would last for more than 12 consecutive months.  As for plaintiff's functional limitations, these

22  differed slightly from Dr. Khan's previous assessment set forth in the narrative report.  Here, Dr.

23  Khan noted that plaintiff can frequently (defined as "from one-third to two-thirds of the time") lift

24  and carry up to 100 pounds; can sit, stand and/or walk up to six hours a day without interruption;

25  did not require a cane for ambulation; can frequently reach, handle, finger, feel and push/pull with

26  both hands; can frequently climb, balance, stoop, kneel, crouch, and crawl; and has no workplace

27  environmental limitations.

28  ////

1          b.      Analysis

2          In light of the difference in functional assessments regarding plaintiff's manipulative

3  limitations, the ALJ gave significant weight to Dr. Khan's opinion in the narrative report and

4  gave reduced weight to his opinion in the medical source statement.  The ALJ found that the

5  February 12, 2011 functional assessment was written closer to the time of examination—that is,

6  on the date of the examination itself—and was more consistent with Dr. Khan's narrative report

7  than the assessment provided on March 20, 2011, over one month later.

8          Plaintiff contends the ALJ erred in relying on the date on which the medical source

9  statement was completed.  Assuming that this was error, the ALJ also relied on the inconsistency

10  between Dr. Khan's opinion in the medical source statement and the contents of the narrative

11  report.  Specifically, the ALJ noted that Dr. Khan's February 12, 2011 report indicated that

12  plaintiff can lift / carry up to 25 pounds frequently and 50 pounds occasionally; is able to balance,

13  stoop, kneel, crouch and crawl without limitation; and is able to reach, handle, finger, and feel

14  without limitation.  But the March 20, 2011 medical source statement, Dr. Khan found that

15  plaintiff can lift / carry up to 100 pounds frequently; can reach, handle, finger, feel and push/pull

16  with both hands frequently; and can climb, balance, stoop, kneel, crouch, and crawl frequently.

17  The court finds that this inconsistency constituted a specific and legitimate reason based on

18  substantial evidence in the record for giving reduced weight to Dr. Khan's March 20, 2011

19  opinion.  The ALJ was entitled to rely on this inconsistency in giving reduced weight to one

20  assessment over the other.  See, e.g., Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685,

21  692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his

22  treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's

23  opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction

24  between treating physician's assessment and clinical notes justifies rejection of assessment);

25  Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a

26  treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

27  findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating

28  physician's opinion that was "unsupported by rationale or treatment notes, and offered no

1  objective medical findings" to support diagnoses was properly rejected); Johnson v. Shalala, 60

2  F.3d 1428, 1433 (9th Cir. 1995) (holding that contradiction between doctor's treatment notes and

3  finding of disability was valid reason to reject treating physician's opinion).  Moreover, the ALJ

4  is the final arbiter with respect to resolving ambiguities in the medical evidence.  See Andrews v.

5  Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining

6  credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing

7  Magallanes, 881 F.2d at 750).  Thus, the court finds no error.

8     B.     Mental Limitations in Hypothetical to Vocational Expert

9         Next, plaintiff argues that the ALJ erred in failing to include any mental limitations in the

10  RFC assessment provided to the VE.

11         At step two of the sequential evaluation process, the ALJ made the following

12  determination regarding plaintiff's concentration, persistence or pace:

13
> With regard to concentration, persistence or pace, the claimant has
14
> moderate difficulties.  The claimant testified that her depression
> causes confusion, and sometimes she does not want to get out of
> bed.  She is tired often.  She cannot complete tasks because she has
15
> trouble concentrating.  For these reasons, the claimant has more
> than mild, but less than marked, limitations in her ability to
16
> maintain concentration, persistence, or pace.

17  AR 22.  Later in the RFC assessment, the ALJ restricted plaintiff to jobs involving simple,

18  repetitive tasks.  AR 23.  But, as plaintiff asserts, the hypothetical posed to the VE did not include

19  any mental limitations at all, either with respect to concentration, persistence or pace, or with

20  respect to the complexity of the tasks that plaintiff could perform.  See AR 50-51.

21         In considering this argument, the undersigned finds first that the ALJ did not need to

22  consider her finding of moderate difficulties with respect to concentration, persistence or pace

23  when assessing plaintiff's RFC.  In Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007), the Ninth

24  Circuit explained that the ALJ need not include the limitations used in determining whether a

25  mental impairment is severe at a step two of the analysis in determining a claimant's RFC finding

26  at step five of the analysis.  As the Hoopai court held, the step two severity determination is

27  "merely a threshold determination of whether the claimant is able to perform his past work.

28  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability."

1   Id.  Courts in this circuit have applied Hoopai to hold that an ALJ does not err in declining to

2   apply a step two determination to a later step in the analysis.  See, e.g., Patrick v. Astrue, 2013

3   WL 2146443, at *28 (D. Or. 2013); Molina v. Astrue, 2012 WL 3656368, at *1 n.1 (C.D. Cal.

4   2012); Kolvick v. Astrue, 2011 WL 4626014, at *3-4 (W.D. Wash. 2011); Marulli v. Astrue,

5   2010 WL 3894612, at *3 (S.D. Cal. 2010) (applying Hoopai to a step-four analysis after finding

6   that the RFC determinations are relevant in both step-four and step-five determinations).

7         But even assuming that the ALJ erred in not including her step two determination in the

8   RFC assessment, the error was harmless because "the term 'moderate' does not necessarily

9   indicate a degree of limitation that must be expressly reflected in the RFC assessment."  Davis v.

10   Astrue, 2012 WL 4005553, at *10 (D. Or. June 12, 2012), adopted by 2012 WL 3614310 (D. Or.

11   Aug. 21, 2012) (citing Bagby v. Astrue, 2012 WL 1114298, at *10 (D. Or. Feb. 7, 2012), adopted

12   by 2012 WL 1114288 (D. Or. Apr. 3, 2012); and Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir.

13   2007)).  Moreover, "an RFC to perform simple, repetitive tasks can be sufficient to accommodate

14   a claimant's moderate limitations in attention, concentration, and social abilities."  Davis, 2012

15   WL 4005553, at *10-11 (citations omitted); Sabin v. Astrue, 337 Fed. Appx. 617, 620-21 (9th

16   Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration,

17   persistence, or pace, claimant could perform "simple and repetitive tasks on a consistent basis");

18   Rogers v. Comm'r of Soc. Sec. Admin., 490 Fed. Appx. 15, 17-18 (9th Cir. 2012) (same).

19         The court now turns to plaintiff's argument that the ALJ erred in failing to include even

20   the limitation as to simple and repetitive tasks in the hypothetical posed to the VE.  The

21   Commissioner, conceding that the ALJ erred in this regard, argues that any error was harmless

22   because those jobs that the VE did identify—hand packer, store laborer, and dishwasher—are in

23   fact limited to simple and repetitive tasks.  The court agrees.  Plaintiff's ability to perform simple

24   and repetitive tasks must be compared to the reasoning level of the jobs identified by the VE.  See

25   Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  "A job's reasoning level . . .

26   gauges the minimal ability a worker needs to complete the job's tasks themselves."  Id.  In this

27   case, the reasoning level for the jobs identified by the VE is 2.  See DOT 920.587-018 (hand

28   packer); 922.687-058 (store laborer); and 318.687-010 (dish washer).  Courts have consistency

held that a limitation requiring simple, repetitive tasks encompasses the reasoning level of 2.  <u>See</u>
<u>Xiong v. Comm'r of Soc. Sec.</u>, 2010 WL 2902508, at *6 (E.D. Cal. 2010) (collecting cases).
Since the jobs identified by the VE were not in conflict with the mental limitations identified by
the ALJ in the RFC, the court finds that any error to provide these limitations to the VE was
harmless.

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied; and

2. The Commissioner's motion for summary judgment is granted.

DATED: February 21, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE